NO. 07-02-0189-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 11, 2002

_____


THE STATE OF TEXAS, ET AL., APPELLANTS

V.

JIMMY GLEN RIEMER, ET AL., APPELLEES


_____

FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;

NO. 30,441; HONORABLE JOHN T. FORBIS, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.*


The State of Texas and David Dewhurst, in his official capacity as the Commissioner of the General Land Office (Commissioner) present this interlocutory

_____

*John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

appeal[1] of the trial court's denial of the State's and Commissioner's pleas to the jurisdiction based on sovereign immunity to claims and causes presented by Jimmy Glen Riemer, individually and as Independent Executor of the Estate of Hugo A. Riemer, Jr., Deceased (Riemer), Richard Coon, Jr., June Meetze Coon Trust, and the Johnson Borger Ranch Partnerships, individually and as class representatives (other landowners). Based upon the rationale expressed herein, we affirm and remand in part and reverse and render in part.

While Brainard v. State, 12 S.W.3d 6 (Tex. 1999)[2] initiated by Brainard and other landowners in Roberts County to establish the boundary of the Canadian River pursuant to Senate Concurrent Resolution 165, 71st Leg., R.S., 1989 Tex. Gen. Laws 5909 (SCR 165) was pending, on December 19, 1993, the State filed suit against Hugo A. Riemer, Jr.[3] seeking to recover possession of land, rent for unlawful use of land, and damages for the unlawful use, occupation and adverse claims to state-owned lands, being the surface of the state-owned *riverbed of the Canadian River, South of the Southern gradient boundary*

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon Supp. 2002).

[2]See discussion of historical facts in State v. Brainard, 968 S.W.2d 403 (Tex.App.-- Amarillo 1998), *aff'd in part and rev'd in part,* 12 S.W.3d 6 (Tex. 1999), regarding the controversy between the State and the landowners adjoining the river following the closing of the Sanford Dam on the Canadian River in 1965.

[3]Riemer, Jr. died during the pendency of this action. His son, Jimmy Glen Riemer, individually and as Independent Executor of his father's estate, was substituted as the party for his deceased father. This interest will be referred to as the Riemer interest.

*along* Sections 30 and 31, in Block 47, H&TC Ry. Co. Survey in Hutchinson County.[4] In response, Riemer filed a plea in abatement contending the State's suit should be abated until similar questions presented in the Brainard case were finally adjudicated, followed by his first amended original answer filed in November 1996. The record reflects that no action was taken until October 26, 1999, when Suggestion of Death of Hugo A. Riemer, Jr. was filed and Riemer filed a second amended answer and an original counterclaim alleging generally that the State had trespassed on the surface and mineral estates.[5]

Following another period of inactivity, on April 24, 2000, Riemer filed his first amended counterclaim and a third party petition by which he made J.M. Huber Corporation a defendant seeking recovery on six counts against the State and Huber for trespass on the mineral estates of Sections 29, 30, and 31. After Huber filed its answer and counterclaim,[6] Riemer filed his second amended counterclaim, amended third party petition and original class action petition, and on July 12, 2000, the State filed its notice

---

[4]In their fact statement, the State and Commissioner assert that the State's claim against Riemer, Jr. was directed to the surface only of the property. By their brief, appellees concede that the fact statement is correct. The State did not assert any claims to Sections 30 and 31, but its claims were limited to the "state-owned" riverbed south of the southern gradient boundary along Sections 30 and 31.

[5]The original counterclaim was filed after the decision in *Brainard*, 12 S.W.3d at 6. It did not include Section 29, Block 47, H&TC Ry. Co. Survey, Hutchinson County.

[6]Huber is not a party to this interlocutory appeal.

of non-suit of its claims without prejudice.  Thereafter, as material here, the record shows that:

- On October 29, 2001, the State filed its plea to the jurisdiction as to the counterclaims, and subject thereto, its special exceptions and answer.

- On December 4, 2001, Riemer, and intervenors Richard Coon, Jr., June Meetze Coon Trust and Johnson Borger Ranch Partnerships filed their Fourth Amended Counterclaim, Second Amended Third Party Petition and First Amended Class Action Petition in which, among other things, for the first time, David Dewhurst, in his capacity as Commissioner of the General Land Office of the State of Texas was made a party.

- On January 15, 2002, the Commissioner filed his plea to the jurisdiction.

- On March 6, 2002, the day the trial court held the hearing on the two motions for dismissal, Riemer filed his fifth amended counterclaim, third amended party petition, and second amended class action petition.

Although the State's original petition did not seek any relief as to Section 29, by his counterclaim, Riemer sought relief as to Sections  29, 30, and 31; the other landowners Coon and Coon Trust sought relief as to nine sections[7]and the Johnson Partnerships

---

[7]Coon and Coon Trust claimed interests in sections 75, 76, 77, 78, 79, 80, 81, 82, and 83, Block 46, H&TC Ry. Co. Survey, Hutchinson County.

sought relief as to eleven sections,[8] all tracts being in Hutchinson County and bordering the Canadian River downstream from the Sanford Dam.

In *Brainard*, before the trial court ruled on the State's motion for summary judgment, it allowed the landowners time to secure a gradient boundary survey to "account for the present, *i.e.*, post-dam, conditions on the Canadian River." 12 S.W.3d at 10. Unlike the title claims of Lain presented in State v. Lain, 162 Tex. 549, 349 S.W.2d 579, 581 (1961), the title claims of Riemer and the other landowners are not based on a survey accounting for "present" post-dam conditions or a regular chain of conveyances previously adjudged to be good, but instead, without pleading specific boundaries by survey or otherwise, or the effective dates of their alleged acquisitions, they claim title to land formerly located in the Canadian River riverbed by accretion.[9] Although Riemer and the other landowners assert similar but not identical claims to the surface of the riverbed, as indicated by their pleadings, their primary focus is directed to the oil and gas production from the riverbed by Huber pursuant to leases from the State, some of which may have been executed

---

[8]Johnson Partnership claimed rights in sections 66, 67, 71, 72, 73, 74, 75, 76, 77, 78, and 79, Block 46, H&TC Ry. Co. Survey, Hutchinson County.

[9]In *Brainard*, the landowners survey, prepared by W.C. Wilson, Jr., was based on accretion caused by the dam and was accepted by the trial court and the Texas Supreme Court. According to that survey, the riverbed is approximately 20 to 50 feet wide. 12 S.W.3d at 12. Accretion is the process of increasing real estate by gradual and imperceptible disposition by water of solid material, through the operation of natural causes so as to cause that to become dry land that was once before covered by water. *Id*. at 17.

before the construction of the Sanford Dam.  As summarized below, their counterclaims[10] include claims for:

|  | Reimer Claims | | Other Landowner Claims |
|---|---|---|---|
| | Conversion | | Declaratory Relief |
| | Action for Accounting | | Conversion |
| | Action to Quiet Title | | Accounting |
| | Violation of Constitutional Rights | | Money Had and Received |
| | Trespass | | Unjust Enrichment |
| | Fraud | | Trespass |
| | | | Violation of Constitutional Rights |
| | | | Fraud |

After hearing the State's and Commissioner's motions to dismiss based on sovereign immunity, the trial court denied them.  Presenting five issues, the State and Commissioner question:

No. 1.  Whether, by filing suit against Hugo A. Riemer, Jr., for trespass to the surface estate of Sections 30 and 31, the State and the Commissioner waived sovereign immunity as to appellees Richard Coon, Jr., June Meetze Coon Trust and the Johnson Borger Ranch Partnerships'(individually and as class representatives ) intervention cause of action relating to the surface and mineral estates of the Disputed Properties?

No. 2.  Whether, by filing suit against Hugo A. Riemer, Jr., for trespass to the surface estate of sections 30 and 31, the State and Commissioner waived sovereign immunity as to appellee Jimmy Glen Riemer (individually and as Independent Executor of the Estate of Hugo A. Riemer, Jr.), counter-claims relating to the surface and mineral estates of Section 29?

---

[10] Reimer and the other landowners having filed their fifth amended counterclaim on the day of the hearing, the State did not have the opportunity to challenge the claims as set out in the pleadings as to form or substance.

No. 3. Whether, by filing suit against Hugo A. Riemer, Jr. for trespass to the surface estate of Sections 30 and 31, the State and Commissioner waived sovereign immunity as to appellee Jimmy Glen Riemer's counter-claims relating to the mineral estates of Sections 30 and 31?

No. 4. Whether appellees have pleaded a claim for constitutional taking of private property for public use under Article I, Section 17 of the Texas Constitution, for which they may seek recovery from the State and the Commissioner? and

No. 5. Whether, absent a waiver of sovereign immunity, appellees Richard Coon, Jr., June Meetze Coon Trust, and the Johnson Borger Ranch Partnerships may obtain a declaratory judgment binding on the State and the Commissioner that establishes the boundary of the disputed properties?

The State and Commissioner request that we reverse the order of March 22, 2002, and render a decision dismissing

- all of intervenors' causes of action for declaratory relief, conversion, accounting, money had and received, unjust enrichment, trespass, violation of class members' constitutional rights, and fraud;
- Riemer's taking claim; and
- Riemer's causes of action for conversion, action for an accounting, action to quiet title, trespass, and fraud insofar as they relate to Section 29 or the mineral estates of Sections 30 and 31 because the District Court lacks subject jurisdiction to hear and decide such claims.

They further request that:

- we remand to the District Court Riemer's non-taking claims insofar as they relate to the surface estate only in Sections 30 and 31 for further proceedings in the case; and

7

•  they recover their costs of this appeal together with such other and further relief as we may find just and proper upon final hearing of the captioned cause.

Boundary Dispute

Accretion-Artificial Causation

In *Brainard*, 12 S.W.3d at 6, the State's claim was grounded upon a survey that was premised on the legal position that any change in the boundary of the river that was caused by the construction of the Sanford Dam did not divest the State of title to the riverbed as it existed before the construction of the dam while the landowners claimed that the artificial change theory was wrong.[11] In rejecting the State's position, the Court held:

> changes brought about or influenced by an artificial structure, such as a dam, must be considered in marking the gradient boundary of a river, so long as the riparian owner does not cause or contribute to the artificial influence. We therefore conclude that a survey of the disputed area must account for present, *i.e.*, post-dam conditions on the Canadian River.

*Id.* at 10. Here also, the State's original claim was based on a survey of the riverbed which did not recognize the changes in the course of the river caused by the construction of the dam, however after the decision in *Brainard*, the State filed a nonsuit. As noted in *Brainard*, accretion is "the process of increasing real estate by the gradual and

---

[11]The Court noted that the differences in the parties' surveys are based on conflicting legal theories that must be resolved by the Court. *Brainard*, 12 S.W.3d at 14.

imperceptible disposition by water of solid material through the operation of natural causes so as to cause that to become dry land that was once before covered by water." *Id.* at 17. The resulting boundaries and effective dates for these purposes have not yet been determined.

Sovereign Immunity & Standard of Review

In the recent case of Texas Natural Resource Conserv. v. IT-Davy, 74 S.W.3d 849 (Tex. 2002), the Court confirmed the appropriate standard for review and reaffirmed several general principles of the doctrine of sovereign immunity. The Court held that because the question of subject-matter jurisdiction is a question of law, we review a trial court's order denying a jurisdictional plea based on sovereign immunity *de novo.* *Id.* at 855.

The Court also restated several general rules, including:

- Sovereign immunity protects the State from lawsuits for money damages and encompasses two principles: immunity from suit and immunity from liability.

- Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit.

- Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue.

- A party suing the State must establish the State's consent to suit, otherwise sovereign immunity from suit defeats a trial court's subject-matter jurisdiction.

9

- A suit against a state official in his/her official capacity is a suit against the State.

*Id.* 853-55. Restating that only the Legislature can waive sovereign immunity, the Court concluded that allowing other governmental entities to waive immunity by conduct would be inconsistent with the existing legislative scheme and declined to recognize a waiver by conduct exception in a breach of contract suit against the State. *Id* at 858. Sovereign immunity also applies to the Commissioner in his official capacity because it amounts to an action against the State which cannot be prosecuted without consent of the Legislature. Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 738 (Tex.App.--Austin 1994, writ denied).

Because the multiple claims of the diverse parties are not entirely common and appellees' brief does not address the five issues of the State and the Commissioner as required by Rule 38.2(a)(1) & (2) of the Texas Rules of Appellate Procedure, we review the issues based on legal topics and parties rather than sequential order. We commence our analysis by considering the constitutional "taking" claims of Riemer and the other landowners.

Constitutional "Taking" Claims

By issue four, the State and Commissioner contend the trial court erred in denying their pleas to the jurisdiction against Riemer and Intervenors' taking claims for alleged violation of constitutional rights under Article I, Section 17, Texas Constitution. We

disagree. Conceding that the doctrine of sovereign immunity does not shield the State from an action for compensation under the takings clause, General Services v. Little-Tex. Insulation, 39 S.W.3d 591, 598 (Tex. 2001), the State and Commissioner argue that Riemer and the other landowners did not plead a claim for constitutional taking of private property for public use. By the fifth amended counterclaim, third amended third party petition, and second amended class action petition, in addition to the claims mentioned below, Riemer alleged an improper taking of his oil and gas, that he had not consented to the taking of his hydrocarbons, and

> the State's purported lease to Huber was for public use in that the royalty proceeds that the State received therefrom was put in the State's general fund for public use.

By the same pleadings, the remaining property owners alleged:

> Defendants intentionally performed various acts that resulted in an improper taking of Class Members' oil and gas. Class members have not consented to the taking of the hydrocarbons, and the State's purported lease to Huber was for public use in that the royalty proceeds that the State received therefrom was put in the State's general fund for public use.

A pleading asserting an unlawful taking of private property must allege that (1) the State intentionally performed certain acts (2) that resulted in a "taking" of property (3) for public use. *See* General Services, 39 S.W.3d at 598; State v. Hale, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); Kerr v. Texas Dept. of Transp., 45 S.W.3d 248, 250 (Tex.App.-- Houston [1st Dist.] 2001, no pet.); and City of Abilene v. Smithwick, 721 S.W.2d 949, 951

11

(Tex.App.--Eastland 1986, writ ref'd n.r.e.). For purposes of this appeal, we must presume that the allegations in pleadings are true and construe them in favor of the pleader. *See Kerr*, 45 S.W.3d at 250. Although the landowners' pleadings do not describe the property by survey or otherwise, do not state whether the landowners claim title by document, accretion, or both, and the effective dates of their acquisitions, even though the allegations may be subject to special exceptions, questions not presented for our review, we conclude the allegations are minimally sufficient for purposes of satisfying the pleading requirements as discussed in *General Services*, 39 S.W.3d at 598.

Moreover, where, as here, the nature of the claim affecting jurisdiction is obvious to the court, and a question of the sufficiency of the pleading is presented, before dismissing the claim, the party should be given an opportunity to replead. Bybee v. Fireman's Fund Ins. Co, 160 Tex. 429, 331 S.W.2d 910, 917 (1960); Harris County Flood Control Dist. v. Adam, 56 S.W.3d 665, 670 (Tex.App.--Houston [14th Dist.] writ dism'd w.o.j. 2001). Accordingly, issue four is overruled.

## Non Constitutional Claims
### State v. Lain and
### Kenedy Memorial Foundation v. Mauro

Without presenting any reply points, Riemer and the other landowners citing State v. Lain, 162 Tex. 549, 349 S.W.2d 579, 581 (1961), commence their argument by asserting that Texas law permits them to challenge a state official's conduct when it is

12

wrongful and a misappropriation of property by actions for declaratory belief. Because *Lain* is the foundation of Riemer's and the other landowners' non-constitutional "takings" claims, before we commence our analysis of the State's issues, we focus on whether *Lain* and Kenedy Memorial Foundation v. Mauro, 921 S.W.2d 278 (Tex.App.--Corpus Christi 1995, writ denied), are controlling or apply to the non-constitutional claims.

In *Lain*, the Court qualified its decision that consent to sue the State was not required by holding, "[o]n the record before us, we hold it is not." 349 S.W.2d at 581. A comparison of the record in *Lain* and the record here compels the conclusion that *Lain* does not support the claims that legislative consent to sue is not essential. In *Lain*, the State officials did not question the landowner's title, which was based on "a regular chain of conveyances" previously adjudged by the Court in City of Galveston v. Menard, 23 Tex. 349. *Id*. Here however, although Riemer and the other landowners assert that this action is a "boundary dispute" they have not pled nor alleged a description or survey of their property. Moreover, the State had been dismissed in *Lain* and was not a party of record on appeal prosecuted by the remaining defendants. Riemer and the other landowners seek relief and damages against the State and Huber. Finally, in *Lain*, the Court held that consent to sue the State was not necessary in an action to recover title or possession of land where the suit "is against individuals only." *Id*.

*Kenedy*, 921 S.W.2d at 278, is likewise not controlling here. Among other reasons, *Kenedy* was predicated on the decision in *Lain*, which as previously demonstrated is not

13

applicable here. Moreover, because the State was a party to a suit then pending in Travis County to determine title and right of possession of the subject property, the court ultimately ordered the case transferred to Travis County for further proceedings. Finally, in *Kenedy*, the Foundation argued that (1) its claims were based on due course of law rules announced in *Lain*, and (2) inverse condemnation principles. Even if otherwise applicable, *Kenedy* does not support the contention that the various tort claims can be maintained without legislative consent.

State's Suit v. Riemer

Other Landowners
&
Riemer's Remaining Claims
Sections 29, 30, & 31, (surface & minerals)

By their first issue, the State and Commissioner contend the commencement of the State's suit against Riemer for trespass to the surface of Sections 30 and 31 did not waive the State's sovereign immunity to allow the other landowners to assert their non-constitutional claims by intervention. Then, by their second issue, the State and Commissioner contend that commencement of a suit against Riemer for trespass to the surface estate of Sections 30 and 31 did not operate to waive sovereign immunity as to Riemer's counterclaims relating to the surface and mineral estate of Section 29. Similarly, by their third issue, they contend that the trespass to try title suit as to the surface of Sections 30 and 31 did not operate to waive sovereign immunity as to Riemer's claims to the mineral estate of Sections 30 and 31. We agree.

Although the State acknowledges that its suit for trespass to the surface of Sections 30 and 31 against Riemer operated to subject the State to "any defense by answer or cross-claim germane to the matter in controversy, " Anderson, Clayton & Co. v. State, 122 Tex. 530, 62 S.W.2d 107, 110 (1933), it contends that sovereign immunity remains viable as to Riemer's claims to the minerals under Sections 30 and 31 and the surface and minerals of Section 29. We agree.

15

Based on the State's original petition, Riemer's claims to Section 29, surface and minerals, and claims to the minerals under Sections 30 and 31, and the other landowners' claims were not germane to the State's claim of trespass to the surface of Sections 30 and 31. Citing State v. Sledge, 36 S.W.3d 152,156 (Tex.App.--Houston [1st Dist.] 2000, pet. denied), the State argues that any waiver of sovereign immunity resulting from condemnation suit would not support a counterclaim for pre-judgment interest. Further, in Fesal v. Hutchinson County, 443 S.W.2d 937, 939 (Tex.Civ.App.--Amarillo 1969, writ ref'd n.r.e), we held that the county did not waive sovereign immunity from tort liability by filing its suit on a sworn account for services rendered a patient by the County Hospital. Based on the limited scope of the State's suit for trespass to the surface of Sections 30 and 31 and our conclusion that *Lain* and *Kenedy* are not controlling, we sustain issues one, two, and three. We also conclude the trial court erred in denying the plea of sovereign immunity to all of Riemer's claims, excluding his constitutional "takings" claim and claims of title to the surface of Sections 30 and 31.

## Declaratory Relief & Remaining Claims of Other Landowners

By issue five, the State and Commissioner contend that sovereign immunity is a bar to the declaratory relief sought by the other landowners. We agree. In an action between private parties to determine whether a constructively severed mineral interest is subject to the doctrine of accretion, in Ely v. Briley, 959 S.W.2d 723 (Tex.App.--Austin 1998, no pet.) the court held that because a "trespass to try title action" was the exclusive remedy

16

to resolve conflicting claims to property, the declaratory judgment rules were not applicable. Even if declaratory relief is available in an action between private parties, *IT-Davy* demonstrates that legislative consent is essential to the action for declaratory judgment when the State is a party. 74 S.W.3d at 855. Although the Court recognized that parties may seek declaratory relief against state officials who allegedly act without legal or statutory authority, it concluded however, that in contrast, declaratory judgment actions against state officials seeking to establish liability are suits against the State. *Id.*

Although the School Land Board may have land surveyed or subdivided into tracts under section 32.064 of the Texas Natural Resources Code (Vernon 2001), instead of seeking mandamus relief to require the Commissioner to obtain a resurvey of school land based on the decision in *Brainard*, the landowners seek to establish their boundary by declaratory judgment. As stated in appellees' brief, the underlying action is a boundary dispute. As such, it is not supported by the decision in *Lain*. Moreover, determination of the boundary here is not an action under

> a deed, will, written contract, or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract . . .

wherein declaratory relief may be available under section 37.004 of the Texas Civil Practice and Remedies Code (Vernon 1997).

17

We have not overlooked Rylander v. Caldwell, 23 S.W.3d 132 (Tex.App.--Austin 2000, no pet.), and other similar cases cited by Reimer and the other landowners; however, *Rylande*r does not apply because the action was a challenge to the constitutionality of a statute whereas the underlying action is not predicated on any statutory provision. Finally, this Court's denial of attorney's fees in *Brainard*, 968 S.W.2d at 414, because it was not a declaratory judgment action was upheld by the Supreme Court. Issue five is sustained.

Accordingly, having concluded the trial court erred in denying Commissioner David Dewhurst's motion to dismiss all claims of the other landowners and Riemer, that part of the order of the trial court signed March 22, 2002, is reversed in part as to Commissioner Dewhurst and judgment is hereby rendered that all non-constitutional claims of Riemer and the other landowners, to wit: (1) conversion, (2) action for accounting, (3) action to quite title, (4) trespass, (5) fraud, (6) declaratory relief and (7) money had and received, (8) unjust enrichment, are dismissed for want of jurisdiction, SAVE AND EXCEPT the constitutional "takings" claims and Riemer's claims to the title to the surface of Sections 30 and 31.

As to the State, having concluded the trial court erred in denying the State's motion to dismiss the non-constitutional claims of the other landowners, to-wit: (1) declaratory relief, (2) conversion, (3) accounting, (4) money had and received, (5) unjust enrichment,

18

(6) trespass, and (7) fraud, judgment is hereby rendered that these seven claims asserted against the State be and are hereby dismissed for want of jurisdiction; and

As to Riemer, having concluded the trial court erred in denying the State's motion to dismiss the non-constitutional claims, to-wit: (1) conversion, (2) action for accounting, (3) action to quiet title, (4) trespass, and (5) fraud, judgment is hereby rendered that these five claims asserted against the State be and are hereby dismissed for want of jurisdiction, SAVE AND EXCEPT Riemer's claims to title to the surface of Sections 30 and 31, above described; and

Finally, concluding the trial court did not err in denying the motions of the State and Commissioner Dewhurst to dismiss the constitutional "takings" claims of the other landowners and Riemer, that part of the order is affirmed, and the cause is remanded to the trial court to consider (1) the constitutional claims of the other landowners and Riemer as they may apply to the State or Commissioner Dewhurst, and (2) Riemer's claims to title to the surface of Sections 30 and 31 above described, and for further proceedings in accordance with this opinion.

Don H. Reavis
Justice

Publish.

19