Opinion Issued December 31, 2007








 




In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00942-CV






HENRY P. PORRETTO, JR. AND ROSEMARIE PORRETTO, Appellants


V.


JERRY PATTERSON, COMMISSIONER OF THE TEXAS GENERAL
LAND OFFICE, TEXAS GENERAL LAND OFFICE, LOU MULLER,
EXECUTIVE DIRECTOR OF THE PARK BOARD OF TRUSTEES OF
THE CITY OF GALVESTON, TEXAS, AND THE PARK BOARD OF
TRUSTEES OF THE CITY OF GALVESTON, TEXAS, Appellees






On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 02CV0295





O P I N I O N


 About twenty-seven acres of waterfront property, gulfward of the seawall on
Galveston Island, present the basis for this dispute. Henry and Rosemarie Porretto
sued the Texas General Land Office (the GLO), and its commissioner, Jerry
Patterson, together with the Galveston Park Board, and its executive director, Lou
Muller, alleging that the defendants have interfered with their fee simple ownership
of the property and taken it without compensation. The trial court dismissed the case
on the defendants' pleas to the jurisdiction, in which they asserted governmental
immunity. 

 The Porrettos appeal, contending (1) the facts alleged support a takings claim,
for which no immunity exists, (2) although immunity bars an action for trespass to try
title as to the State, the Porrettos nevertheless can sue Patterson and Muller, (3) an
interim settlement agreement executed by the Porrettos, the GLO, and the Park Board,
and filed with the trial court, is enforceable, and (4) section 306.041(a) of the Local
Government Code waives any governmental immunity. We conclude that the
Porrettos' takings claim is not barred by governmental immunity, and we follow
Texas Supreme Court precedent allowing suit against the officials. We further
conclude that the Local Government Code does not otherwise waive governmental
immunity, and thus governmental immunity bars the Porrettos' claim for slander of
title. Finally, we conclude that the Porrettos' breach of settlement agreement claim
may proceed only insofar as it relates to claims against which no governmental
immunity lies in the first instance. We therefore affirm in part and reverse and
remand in part.

Background

 There being no reporter's record or trial court findings, we recite the facts from 
the Porrettos' petition, which we accept as true at this stage of the proceedings. (1)
 The
Porretto family purchased fee simple title in the disputed property beginning in the
late 1950's. For more than 40 years, the family earned income from the property with
rental concessions for beach amenities, like umbrellas, chairs, floats, and boats. As
landowners, the Porrettos continuously have paid property taxes, maintained liability
insurance, and constructed and maintained fixtures and improvements on the
property. Among the fixtures is a $50,000 ramp that provides public and emergency
vehicle access from Seawall Boulevard to the beach. 

 According to the Porrettos' petition, in recent years, the defendants wrongfully
have occupied, used, and interfered with the Porrettos' use of their property. In
addition, the Porrettos claim a cloud on the title to the land. The Porrettos point to
three leases, attached as exhibits to their petition. First, in October 1994, the State,
through the GLO, leased the property to the City of Galveston for the purpose of
beach replenishment. Second, in December 1994, the State, through the GLO, leased
the property to the City of Galveston for the purpose of public recreational use, and
placed the leases under Park Board Management. Third, in November 1999, the City
of Galveston, by and through the Park Board, leased a portion of the disputed
property to Paul Roure and Virginia Nagra for the purpose of providing beach
concessions. According to the Porrettos, these leases recite that the State and
Galveston County own the land south of the seawall, without acknowledgment of the
Porrettos' land. In July 2001, the Porrettos entered an agreement to sell their property
to Southbrook Investments, Inc. for 7.5 million dollars. Southbrook later cancelled
the contract, citing a cloud on the Porrettos' title caused by the three government
leases.

 In their petition, the Porrettos seek (1) a declaratory judgment against all
defendants that they have "no right of ownership of any nature as to the Property[,]"
(2) to quiet title, via a trespass to try title claim against Patterson and Muller, (3)
compensation for a taking of their land, as the Fifth Amendment and Article 1,
section 17 of the Texas Constitution afford, and (4) damages for slander of title. In
addition, while this litigation was pending in the trial court, the Porrettos and the
defendants participated in a mediation, reached a settlement agreement, and filed it
with the trial court. Their agreement foundered in its execution. The Porrettos
amended their petition to include a breach of contract claim based on the defendants'
alleged failure to comply with the terms of the settlement. 

 In response to the suit, the defendants answered, and filed pleas to the
jurisdiction based on the doctrine of governmental immunity. The defendants did not
offer evidence in support of their plea, nor did they dispute the Porrettos' evidence
of ownership of the tracts in question or the veracity of the lease agreements attached
to the Porrettos' petition. (2) The trial court granted the jurisdictional pleas.

Standard and Scope of Review

 Subject-matter jurisdiction is essential for a court to have the authority to
resolve a case, and a trial court lacks jurisdiction over a governmental unit that is
immune from suit. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443
(Tex. 1993). A party may challenge a court's subject-matter jurisdiction by filing a
plea to the jurisdiction. See Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638-39
(Tex. 1999). We review de novo a trial court's ruling on a jurisdictional plea. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). In our review, we
do not examine the underlying merit of the plaintiff's case, but consider only the
plaintiff's pleadings and evidence pertinent to the jurisdictional inquiry. County of
Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). We construe the pleadings
liberally in favor of conferring jurisdiction. Tex. Dep't of Transp. v. Ramirez, 74
S.W.3d 864, 867 (Tex. 2002).

 A plaintiff bears the burden to allege facts affirmatively demonstrating the trial
court's jurisdiction to hear the case. Dallas Area Rapid Transit v. Whitley, 104
S.W.3d 540, 542 (Tex. 2003). To prevail on a plea to the jurisdiction, the defendant
must show an incurable jurisdictional defect apparent from the face of the pleadings,
making it impossible for any amendment of the plaintiff's petition to confer
jurisdiction on the trial court. Bybee v. Fireman's Fund Ins. Co., 160 Tex. 429, 438,
331 S.W.2d 910, 917 (1960).

The Takings Claim

 The Porrettos contend the trial court erred in dismissing their constitutional
takings claim. They observe that this case has two aspects: allegations that the
government is "using" or "taking" their property, which support their claim for
inverse condemnation, and allegations that governmental officials are wrongfully
claiming title their land, for which longstanding Texas Supreme Court precedent
allows a suit to proceed. The defendants respond that the Porrettos improperly have
recast a trespass to try title claim against the State as a takings claim, the former a
claim for which they must obtain legislative consent to sue, and thus the Porrettos
allege no claim that survives a jurisdictional plea.

 The Fifth Amendment grants a landowner the right to seek compensation from
the government for land that it takes: "[N]or shall private property be taken for public
use, without just compensation." U.S. Const. amend. V. Likewise, the Texas
Constitution provides, "No person's property shall be taken, damaged or destroyed
for or applied to public use without adequate compensation being made, unless by the
consent of such person . . . ." Tex. Const. art. I, § 17. Thus, while sovereign
immunity protects the State from lawsuits for monetary damages, it "offers no shield
against a taking claim brought under Article I, section 17 of the Texas Constitution." 
Kenedy Mem'l Found. v. Mauro, 921 S.W.2d 278, 282 (Tex. App.--Corpus Christi
1995, writ denied); see also Gen. Servs. Comm'n v. Little-Tex Insulation Co., 39
S.W.3d 591, 598 (Tex. 2001) (sovereign immunity does not shield State from action
for compensation under takings clause). Rather, "[t]he Constitution itself is . . . a
waiver of governmental immunity for the taking, damaging or destruction of property
for public use." Steele v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980). "A
physical taking may occur when the government physically appropriates or invades
private property, or unreasonably interferes with the landowner's right to use and
enjoy it." Tarrant Reg'l Water Dist. v. Gragg, 151 S.W.3d 546, 554 (Tex. 2004). If
the government uses private property without first paying for it, an owner may
recover damages for inverse condemnation. Id. (holding that evidence was legally
sufficient to support finding that government reservoir caused recurrent destructive
flooding directly impacting ranch land); see also Texas Parks & Wildlife Dept. v.
Callaway, 971 S.W.2d 145, 149 (Tex. App.--Austin 1998, no pet.) (action for inverse
condemnation is exception to doctrine of sovereign immunity). 

 In contrast, a trespass to try title action against the State requires legislative
consent. State v. Lain, 162 Tex. 549, 552, 349 S.W.2d 579, 582 (1961) ("When in
this state the sovereign is made a party defendant to a suit for land, without legislative
consent, its plea to the jurisdiction of the court based on sovereign immunity should
be sustained in limine"). Texas courts have repeatedly held that a trespass to try title
action is the proper method of adjudicating rival claims to real property. Martin v.
Amerman, 133 S.W.3d 262, 264 (Tex. 2004) (holding that trespass to try title is "the
method for determining title to . . . real property." ); Rogers v. Ricane Enters., 884
S.W.2d 763, 768 (Tex. 1994); Yoast v. Yoast, 649 S.W.2d 289, 292 (Tex. 1983). It
is this line which the government contends supports its plea to the jurisdiction. 

 With respect to the Porrettos' takings claim, we disagree with the
government-- a takings claim is not a functional equivalent of a trespass to try title
claim or a suit to quiet title. In a trespass to try title or to quiet title action, an owner
sues to recover immediate possession of land unlawfully withheld. Katz v. Rodriguez,
563 S.W.2d 627, 629 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.) (noting
that a trespass to try title suit affords a legal remedy by statute and a suit to quiet title
affords an equitable remedy, but both are actions to recover possession of land
unlawfully withheld). A prevailing party's remedy is title to, and possession of, the
real property interest at issue in the suit. See Florey v. Estate of McConnell, 212
S.W.3d 439, 449 (Tex. App.--Austin 2006, pet. denied).

 On the other hand, a takings claim is one in which a landowner alleges that the
government has taken his property for public use without permission, for which he
seeks compensation. City of Abilene v. Burk Royalty Co., 470 S.W.2d 643, 646 (Tex.
1971). The available remedy is a key distinction between the two. While one suit
quiets title and possession of the property, see Florey, 212 S.W.3d at 449, the other
allows only for just compensation for the property taken or used--the prevailing party
does not regain use of land lost to the public's use, or win possession of it. See
Hallco Tex., Inc. v. McMullen Co., 221 S.W.3d 50, 56 (Tex. 2007). And, although
land ownership is universally an underlying consideration of a takings claim,
legislative consent is unnecessary to pursue just compensation (as opposed to
possession and title) because the Texas and United States Constitutions already grant
private landowners such a right. As the Texas Supreme Court has observed, if the
government could claim immunity for a taking by simply asserting title, then it need
never legally condemn land--it "could simply appropriate it, and the landowner
would be entitled to no compensation unless the Legislature granted him permission
to sue." Griffin v. Hawn, 161 Tex. 422, 426, 341 S.W.2d 151, 153 (1960).

 In support of their position, the defendants rely upon Bell v. State Department
of Highways and Public Transportation, 945 S.W.2d 292, 293 (Tex. App.--Houston 
[1st Dist.] 1997, pet. denied) and Texas Southern University v. State Street Bank and
Trust Company, 212 S.W.3d 893, 911 (Tex. App.--Houston [1st Dist.] 2007, pet.
denied). In Bell, a landowner filed a declaratory judgment action, seeking title to
property upon which the State had built a highway. The State claimed title to the
property by a lost deed and adverse possession. Id. This Court held that Bell's suit
was, in effect, a trespass to try title action against the state. Id. at 294. The
landowner in Bell, however, did not seek compensation for an inverse condemnation,
but instead sought title to the land. Id. Thus, our court's holding in that case is
distinguishable. 

 In Texas Southern, a bank sued the university for inverse condemnation after
the university refused to pay for equipment provided to it under a lease/purchase
agreement. 212 S.W.3d at 898-99. Our court affirmed the trial court's denial of the
university's plea to the jurisdiction in part, but concluded that the bank's claim for
inverse condemnation was properly dismissed because the university took the
property under color of contract, as conceded by the parties in their pleadings. Id. at
911. In contrast to Texas Southern, in which the parties conceded the existence of a
contract by which the university took possession of the equipment, here, the
Porrettos' claim of ownership in the land is unchallenged in the pleadings and the
evidence. Id. 

 Instead, the facts in this case resemble those in State v. Reimer and Kenedy
Memorial Foundation v. Mauro, cases in which takings claims survived a plea to the
jurisdiction. See State v. Riemer, 94 S.W.3d 103, 109 (Tex. App.--Amarillo 2002,
no pet.) (holding that allegations that State's lease and actions that resulted in taking
of oil and gas were sufficient to state claim for inverse condemnation); see also
Kenedy Mem'l Found., 921 S.W.2d at 282 (holding that inverse condemnation claim
survived jurisdictional plea where foundation alleged that state mineral leases
encroached on foundation's property).

 Finally, the defendants respond that the Porrettos' takings claim must be
dismissed for lack of jurisdiction because they had no intent to take the Porrettos'
land, but rather only to assert the government's "rights." But the government offered
no evidence on the issue of ownership or title, or even a colorable assertion of
ownership in the land; therefore, we must accept the Porrettos' allegation that they
are the fee simple owners of the land as true for purposes of evaluating this appeal. 
Viewed, as we must, in a light favorable to conferring jurisdiction, an allegation that
the government conveyed leasehold rights to a third party on land that the Porrettos'
own is not an allegation of accidental or unintended use of land; rather, it is an
allegation of an intentional act that interferes with the vested right of a landowner. 
See Riemer, 94 S.W.3d at 109; see also Gragg, 151 S.W.3d at 554 (affirming inverse
condemnation judgment against government where landowner proved taking was not
unintended). (3) 

 At this stage of the proceedings, the government did not controvert the
Porettos' allegations of ownership of the land in question, and have challenged the
Porrettos' claims without regard to the truth of their claim of ownership. (4) It is true
that, to prove their takings claim, the Porrettos necessarily will have to prove that they
own the property that the State allegedly has taken or used. If the Porrettos prove that
they own the disputed property, and that it has been "taken" by the State, the Porrettos
can recover compensation--but the leases that allegedly interfere with use of the
property stand firm. Because the state and federal constitutions grant authority to
landowners to seek compensation for government takings, and the Porrettos properly
have alleged such a claim, we hold that the trial court erred in granting the
government defendants' pleas to the jurisdiction as to the Porrettos' inverse
condemnation claim.

Trespass to Try Title Claims against the Government Officials

 The Porrettos further contend the trial court erred in dismissing their trespass
to try title claims against governmental officials Patterson and Muller. Recognizing
that the State and Galveston are immune from a trespass to try title action, the
Porrettos rely upon State v. Lain to sue Patterson and Muller, who acted in their
official capacities when executing the leases that the Porrettos contend cloud their
title. 162 Tex. at 553, 349 S.W.2d at 582; see also Griffin, 161 Tex. at 426, 341
S.W.2d at 153.

 In Lain, a landowner filed a trespass to title suit against the State and several
of its officials, alleging that the State had trespassed on his land by constructing a
ferry landing and dredging a channel over his property. 162 Tex. at 549, 349 S.W.2d
at 580. The trial court dismissed the State as a party on its plea to the jurisdiction, but
denied the pleas of the governmental officials. Id. The Texas Supreme Court
affirmed the trial court's decision, holding that the State's immunity does not inure
to the benefit of its officials:

 When suit for recovery of title to and possession of land, filed without
legislative consent, is not against the state itself, but is against
individuals only, the mere assertion by pleading that the defendants
claim title or right of possession as officials of the state and on behalf of
the state, will not bar prosecution of the suit.


 . . . . 


 One who takes possession of another's land without legal right is no less
a trespasser because he is a state official or employee, and the owner
should not be required to obtain legislative consent to institute a suit to
oust him simply because he asserts a good faith but overzealous claim
that title or right of possession is in the state and that he is acting for and
on behalf of the state.


Id. at 552, 349 S.W.2d at 581.


 The Lain court then established the trial court's procedure for adjudicating such
cases:


 [W]hen officials of the State are the only defendants, or the only
remaining defendants, and they file a plea to the jurisdiction based on
sovereign immunity, it is the duty of the court to hear evidence on the
issue of title and right of possession and to delay action on the plea until
the evidence is in. If the plaintiff fails to establish his title and right of
possession, a take nothing judgment should be entered against him as in
other trespass to try title cases. If the evidence establishes superior title
and right of possession in the sovereign, the officials are rightfully in
possession of the sovereign's land as agents of the sovereign and their
plea to the jurisdiction based on sovereign immunity should be
sustained. If, on the other hand, the evidence establishes superior title
and right of possession in the plaintiff, possession by officials of the
sovereign is wrongful and the plaintiff is entitled to relief. In that event
the plea to the jurisdiction based on sovereign immunity should be
overruled and appropriate relief should be awarded against those in
possession. . . . The judgment against the individuals, predicated as it is
upon an incidental determination that title and right of possession is in
the plaintiff, is not binding on the sovereign.


Id. at 552-53, 349 S.W.2d at 582. The Porrettos contend that the trial court
prematurely sustained Patterson and Muller's jurisdictional pleas because Lain
obligates a trial court to hear evidence regarding title and possession before
dismissing the case. Id. Patterson and Muller respond that the Porrettos failed to
object to the trial court's failure to hold a hearing.

 In Texas Parks & Wildlife v. Miranda,
 the Texas Supreme Court held that a
trial court's review of a plea to the jurisdiction challenging the existence of
jurisdictional facts should mirror that of a traditional summary judgment. 133 S.W.3d
217, 226-27 (Tex. 2004); see Tex. R. Civ. P. 166a(c). The court explained that, by
requiring the State to meet the summary judgment standard of proof, "we protect the
plaintiffs from having to 'put on their case simply to establish jurisdiction.'"
Miranda, 133 S.W.3d at 228 (quoting Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547,
554 (Tex. 2000)). Under Miranda, the burden is on the government to adduce
evidence establishing as a matter of law that the trial court lacks jurisdiction. 133
S.W.3d at 228. The burden then shifts to the plaintiff to demonstrate that a disputed
issue of material fact exists regarding the jurisdictional issue. Id. The defendant
cannot simply deny the existence of jurisdictional facts and force the plaintiff to raise
a fact issue. Id. Because Lain requires the trial court to hold an evidentiary hearing
before ruling on an official's plea to the jurisdiction, the initial burden was on
Patterson and Muller to claim a superior right to the land on behalf of the
government. Lain, 162 Tex. at 552-53, 349 S.W.2d at 582; see Miranda, 133 S.W.3d
at 228. Only then does the burden shift to the Porrettos. In their answer and
jurisdictional plea, the government did not deny the Porrettos' claim of title, nor did
they attempt to show a right to the disputed land. Thus, the trial court's dismissal of
the trespass to try title claim against the officials was premature. (5)

 The court in Lain expressly held that a trespass to try title action can be
maintained against governmental officials acting in their official capacities. Lain,
162 Tex. at 552, 349 S.W.2d at 581. "The rationale of the rule is that in such cases
possession is not in fact held for the sovereign but is wrongfully held." Id. at 552,
349 S.W.2d at 582. It matters not that the officials claim that "title or right of
possession is in the State." Id. at 581. While contrary to the general rule that in other
circumstances, a suit against a governmental official in his official capacity is a suit
against the State, the Texas Supreme Court has never overruled it, and thus we follow
it. (6) See DeMino v. Sheridan, 176 S.W.3d 359, 366 (Tex. App.--Houston [1st Dist.]
2004, no pet.).

 There being no evidence in the record from which to conclude that the
government had a colorable right of possession, or even an assertion of right or title
to the property in question, we hold that the trial court erred by granting Patterson's
and Muller's pleas to the jurisdiction on the Porrettos' trespass to try title claims
against them. We note that any judgment against Patterson and Muller does not bind
the State. See Lain, 162 Tex. at 552, 349 S.W.2d at 582.

Breach of Contract

 The Porrettos further contend that the trial court erred by granting the GLO and
Patterson's jurisdictional pleas on the Porrettos' breach of contract claims. They
allege that the GLO and Patterson breached the settlement agreement by "refusing
to provide a letter disclaiming any state interest in the Porrettos' waterfront lots above
the mean high tide line." The Porrettos further contend that the GLO and Patterson
have waived immunity from suit on the settlement agreement. In Texas A & M
University--Kingsville v. Lawson, the Texas Supreme Court held that a governmental
entity that agrees to settle a lawsuit from which it is not immune cannot claim
immunity from suit for breach of the settlement agreement relating to that claim. 87
S.W.3d 518, 521 (Tex. 2002) (plurality op.). The policy supporting this holding is
that the government should not regain immunity it previously has waived by settling
a case. Id. at 522. Because the GLO is not immune from the Porrettos' takings claim,
under Lawson, the Porrettos' breach of contract claim can proceed, but only to the
extent it arises out of the takings claim. Id. The trial court thus erred by granting the
GLO's plea to the jurisdiction on the Porrettos' breach of contract claim.

 Although we have held that the Porrettos' trespass to try title action can
proceed against Patterson, it does not follow that they may proceed with their breach
of contract claim against him. The Porrettos' breach of contract claim seeks recovery
for Patterson's failure to execute a letter disclaiming any interest by the State in
portions of the disputed property. Only persons having actual authority to act on
behalf of the State can bind it in contract. State ex rel. Dep't of Crim. Justice v.
VitaPro Foods, Inc., 8 S.W.3d 316, 322 (Tex. 1999). Under Lain, however, if the
Porrettos have superior title, possession by Patterson "is not in fact held for the
sovereign but is wrongfully held." Lain, 162 Tex. at 552, 349 S.W.2d at 582. In its
non-immune existence, the Porrettos' trespass to try title claim is founded on a theory
that Patterson is acting outside his authority as a government official in possessing
their property. Since the State is immune from a trespass to try title claim, Patterson
cannot dispose of the State's immunity by settling the suit against him so as to bind
the State--thus incurring a contractual obligation on behalf of the State arising out
of a claim to which the State is immune. See id.; see also Lawson, 87 S.W.3d at 522
(noting that "a governmental entity would not, in settling a suit for which immunity
has been waived, undertake an obligation that exposes it to liability much greater or
different than that which it faced from the original claim."). The trial court therefore
properly granted Patterson's plea to the jurisdiction on the Porrettos' claim for breach
of contract against him.

The Local Government Code

 Relying on Missouri Pacific Railroad v. Brownsville Navigation District, the
Porrettos contend that the Legislature generally has waived sovereign immunity for
claims against park boards under section 306.041(a) of the Local Government Code,
which provides that a park board "may sue and be sued in its own name." Missouri
Pac. R.R. v. Brownsville Navig. Dist., 453 S.W.2d 813, 813 (Tex. 1970) (holding that
such statutory language "is quite plain and gives general [legislative] consent for [a]
District to be sued in the courts of Texas in the same manner as other defendants."). 
 After the Porrettos filed their brief in this case, the Texas Supreme Court overruled
Missouri Pacific, holding that "sue and be sued" statutes do not, in and of themselves,
waive governmental immunity. Tooke v. City of Mexia, 197 S.W.3d 325, 342 (Tex.
2006). We therefore hold that the "sue and be sued" language in section 306.041(a)
does not constitute an independent basis for denying the Park Board's plea to the
jurisdiction. As section 306.041 is the only basis upon which the Porrettos rely to
assert their claim for slander of title, we hold that the trial court properly dismissed
that claim.Conclusion

 We reverse the trial court's order as it relates to the Porrettos' inverse
condemnation claims, and remand those claims for further proceedings. We reverse
the trial court's order as it relates to the trespass to try title claims against Patterson
and Muller, individually, and remand those claims for further proceedings. We
reverse the order as it relates to the Porrettos' breach of contract claim against the
GLO and remand that claim for further proceedings, but only insofar as that claim
corresponds to the claim for inverse condemnation. We affirm the trial court's
judgment as it relates to the Porrettos' breach of contract claim against Patterson,
individually, and to the Porrettos' claims for slander of title. All pending motions are
denied as moot.


 Jane Bland

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.


Chief Justice Radack, dissenting.

 
1. See City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d
304, 308 (Tex. App.--Houston [1st Dist.] 2001, pet. denied)
.

2. The lease agreements refer to "state owned submerged land," which may
form the basis for an assertion of title by the State. See City of Galveston v. Texas
Gen. Land Office, 196 S.W.3d 218, 220 (Tex. App.--Houston [1st Dist.] 2006, pet.
denied). But nothing in the record so indicates. The GLO did not, for example, assert
in its plea that the disputed land is state owned, nor did it attempt to prove that the
State owns the land in question, either by title or by natural beach erosion. In the
briefing on the plea, the State refers to an assertion that it has title, but it never so
asserted in its answer, or in its plea.
3. The Park Board observes in its post-submission briefing that it at least
leased the property to a third party in reliance on its lease with the GLO, and thus it
acted under color of contract. See State v. Holland, 221 S.W.3d 639, 644 (Tex. 
2007). Unlike the facts in Holland, where the State produced uncontroverted
evidence that it accepted benefits pursuant to contractual arrangements with third
parties, the allegation here is that the government in effect contracted with itself to
create immunity. Absent evidence that such a contract can be traced to a colorable
right to the Porrettos' land, which has not been adduced at this stage of the
proceedings, the Park Board's lease from the GLO does not confer to the Park Board
immunity from an inverse condemnation claim any greater than that held by the GLO.
4. In this respect, this case differs from cases in which the State is immune
because it has provided evidence that it acted under of color of contract. See, e.g.,
Holland, 221 S.W.3d at 644 (noting that the State was immune from inverse
condemnation claim based on infringement with patent rights because the State
"presented uncontroverted evidence" it had acted "pursuant to contractual
agreements"). 
5. The officials further respond that Lain is inapplicable because, in that
case, the State was not a party, whereas here, the State is a party through the GLO,
with respect to the Porrettos' claim for inverse condemnation. Lain, 162 Tex. at 549,
349 S.W.2d at 580. We find this distinction unpersuasive. In Lain, the State also was
a party to the trespass to try title suit, but the trial court dismissed it on a plea to the
jurisdiction, leaving only the government officials as defendants. Id. In this case, the
trespass to try title claims are against the officials only. As such, Patterson and
Muller are the "only remaining defendants" in the trespass to try title claim, as
contemplated by Lain. Id. at 552-53, 349 S.W.2d at 582.
6. Although Lain expressly permits suit against government officials who
wrongfully assert title in a landowner's private property to quiet title, and we follow
it for that principle, we do not suggest that government officials waive immunity for
money judgments sought in such a suit. Lain, 162 Tex. at 552, 349 S.W.2d at
581-82; cf. Tex. Nat'l Res. Conserv. Comm'n v. IT-Davy, 74 S.W.3d 849, 856 (Tex.
2002) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit
by characterizing a suit for money damages, such as a contract dispute, as a
declaratory-judgment claim.").