

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00002-CV

THE STATE OF TEXAS AND JERRY PATTERSON AS COMMISSIONER
OF THE GENERAL LAND OFFICE OF THE STATE OF TEXAS,
AND COMMISSIONER GEORGE P. BUSH, APPELLANTS

V.

JIMMY GLEN RIEMER, RICHARD COON, JR., JUNE MEETZE COON
TRUST, HAP JOHNSON REALTY CO., LLC, AND W.R. EDWARDS, JR.
D/B/A W.R. EDWARDS, JR. OIL AND GAS, ET AL., APPELLEES

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 30,441-B, Honorable Curt Brancheau, Presiding

March 7, 2019

OPINION

Before CAMPBELL and PIRTLE and PARKER, JJ.

In this interlocutory appeal, appellants the State of Texas and Jerry Patterson, as Commissioner of the General Land Office of the State of Texas, and Commissioner George P. Bush (collectively, "the State"), challenge the trial court's order denying their

plea to the jurisdiction.[1]  In the trial court, appellants are defendants in the suit brought by appellees Jimmy Glen Riemer, *et al.*,[2] who allege they are the owners of surface and minerals interests in lands along a stretch of the Canadian River in Hutchinson County. We will affirm the court's order.

Background

The litigation began in 1993 when the State sued Jimmy Glen Riemer's father, Hugo A. Riemer, Jr., alleging he was trespassing on State land in sections 30 and 31, Block 47, H.& T.C.R.R. Survey, Hutchinson County.  Riemer asserted counterclaims and others joined the litigation.[3]

In February 2017, appellees filed their Fourteenth Amended Counterclaim and Twelfth Amended Third-Party Petition.  According to appellees their "claims are limited to takings, ultra vires, and a declaratory judgment that the river is non-navigable."  Some three months later, in May 2017, the State filed a plea to the jurisdiction addressed to appellees' February 2017 pleading.  Also that month, the trial court granted a partial

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2018) (permitting the interlocutory appeal of an order granting or denying a governmental unit's plea to the jurisdiction); *Tex. A&M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 846 (Tex. 2007) (holding "a state official may seek interlocutory appellate review from the denial of a jurisdictional plea").

[2] Appellees are Jimmy Glen Riemer, Richard Coon, Jr., June Meetze Coon Trust, Hap Johnson Realty Co., LLC, W.R. Edwards, Jr. d/b/a W.R. Edwards, Jr. Oil and Gas, Billy Paul Riemer, Scharron Ann Riemer, Jimmy Greene, Trustee, Randall Black, Joan B. Vernon, Linda Lamar, and Theresa Gail Elliott.

[3] For additional background information *see State v. Riemer,* 94 S.W.3d 103 (Tex. App.—Amarillo 2002, no pet.); *Riemer v. State,* 342 S.W.3d 809 (Tex. App.—Amarillo 2011)*, rev'd,* 392 S.W.3d 635 (Tex. 2013); *Riemer v. State,* 452 S.W.3d 491 (Tex. App.— Amarillo 2014, pet denied).

summary judgment in favor of appellees, declaring the portion of the Canadian River west of the Borger-Stinnett highway[4] is non-navigable.

After a November 2017 hearing, the trial court signed an order in December 2017, by which it granted, over the State's objection, appellees' motion to sever the claims asserted by their February 2017 pleading and that pertain to land lying east of the Sanford Dam and west of the Borger-Stinnett highway into a separate cause, leaving in the original cause appellees' claims pertaining to land lying east of the Borger-Stinnett highway. At the same time, in the severed cause, the court signed an order denying the State's plea to the jurisdiction. That order denying the State's jurisdictional plea is the subject of this interlocutory appeal. By virtue of the severance, the course of the river subject to this interlocutory appeal stretches east from the Sanford Dam, which impounds Lake Meredith, to the Borger-Stinnett highway.

Analysis

The State and its agencies are generally immune from suit in the absence of an express waiver of its sovereign immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust,* 354 S.W.3d 384, 388 (Tex. 2011). Immunity from suit deprives a trial court of subject matter jurisdiction in lawsuits in which the State has been sued without its consent. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *City of Elsa v. Gonzalez,* 325 S.W.3d

---

[4] In its order, the trial court took judicial notice of "the location of the highway bridge traversing the Canadian River between Stinnett and Borger, Texas." We take judicial notice that State Highway 136 is the highway between Stinnett and Borger and crosses the Canadian River.

3

622, 625 (Tex. 2010). In performing this review, we do not look to the merits of the case, but consider only the pleadings and evidence relevant to the jurisdictional inquiry. *Miranda,* 133 S.W.3d at 227; *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002).

Texas law provides "sovereign immunity bars [Uniform Declaratory Judgment Act (UDJA)] actions against the state and its political subdivisions absent a legislative waiver." *Tex. Dep't of Transp. v. Sefzik,* 355 S.W.3d 618, 620 (Tex. 2011) (per curiam); *Sawyer Trust,* 354 S.W.3d at 388-89 (holding absent State's consent sovereign immunity bars trespass to try title suit against State even if brought as action for declaratory judgment under UDJA) (citing *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961)). While the governmental entity is immune from such suits absent consent, it is "[v]ery likely" the same claim could be brought against the appropriate state official in his official capacity for nondiscretionary acts unauthorized by law under the ultra vires exception to immunity. *Sefzik,* 355 S.W.3d at 621 (citing *City of El Paso v. Heinrich,* 284 S.W.3d 366, 372-73 (Tex. 2009)). "An ultra vires suit is one to require a state official to comply with statutory or constitutional provisions." *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 633 (Tex. 2010). Immunity does not bar an ultra vires claim for prospective injunctive and declaratory relief against individual governmental officials acting in their official capacities, *Heinrich,* 284 S.W.3d at 372, although a governmental entity cloaked with sovereign immunity remains immune from suit. *Texas Dept. of Ins. v. Reconveyance Services, Inc.,* 306 S.W.3d 256, 258 (Tex. 2010). To come within the ultra vires exception to immunity, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority

4

or failed to perform a purely ministerial act." *Heinrich,* 284 S.W.3d at 372.  An official acts without legal authority "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself."  *Houston Belt & Terminal Ry. v. City of Houston,* 487 S.W.3d 154, 158 (Tex. 2016).  An ultra vires suit does not attempt to control the State but seeks to reassert State control.  *Heinrich,* 284 S.W.3d at 372.

Law of the Case Doctrine

In support of its claim that the trial court erred by denying its plea to the jurisdiction, the State first argues that in *State v. Riemer,* 94 S.W.3d 103 (Tex. App.—Amarillo 2002, no pet.), we held appellees could proceed against the State with their constitutional takings claims and for trespass to the surface of sections 30 and 31, but otherwise all of their claims alleged against the State and the land commissioner were barred by sovereign immunity.  This holding, they argue, is law of the case and therefore precludes appellees from asserting their ultra vires claim against the land commissioner.

Under the law of the case doctrine questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.  *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986).  Functionally, the doctrine narrows the issues in subsequent stages of the litigation thus achieving uniformity of decision and judicial economy and efficiency.  *Id.*  The doctrine is rooted in public policy and is "aimed at putting an end to litigation."  *Id.*  But it "does not necessarily apply when either the issues or the facts presented at successive appeals are not substantially the same as those involved in the first trial."  *Id.* (citations omitted).  If pleadings have been amended, "it may be that the issues or facts have sufficiently changed so that the law of the case no longer applies."

5

*Id.* (citations omitted). Its application "lies within the discretion of the court, depending on the particular circumstances surrounding that case." *Briscoe v. Goodmark Corp.,* 102 S.W.3d 714, 716 (Tex. 2003). The doctrine does not confer or limit subject matter jurisdiction and is not a limitation on the power of a court to act. *Entergy Corp. v. Jenkins,* 469 S.W.3d 330, 336-37 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

The jurisdictional issues we addressed in our 2002 opinion are not the same as those now presented. It was years after 2002 when appellees first alleged the river was not navigable. The pleadings we considered in our 2002 opinion did not contain an allegation that then-land commissioner David Dewhurst acted ultra vires by claiming title to the riverbed for the State when the river was non-navigable. Moreover, were we to rely only on our 2002 opinion to resolve this appeal, under the amended pleadings, we would fail to give effect to the Texas Supreme Court's clarification of our state's law in *Heinrich.* As the court noted in *Sefzik,* 355 S.W.3d at 621, "*Heinrich* clarified an area of the law that had been unclear, namely, the intersection between the doctrine of sovereign immunity and the *ultra vires* exception to it." And, more specifically, we would fail to take into account the court's application of *Heinrich* and *Lain* in *Sawyer Trust,* in which the court addressed the availability of an ultra vires claim in the context of a dispute over navigability. 354 S.W.3d at 393 ("If a government official acting in his official capacity possesses property without authority, then possession is not legally that of the sovereign. Under such circumstances, a defendant official's claim that title or possession is on behalf of the State will not bar the suit") (citation omitted); *see id.,* 354 S.W.3d 384, 395 (Jefferson, C.J., concurring) ("In *Lain*, we made clear that a government actor is not immune from a trespass-to-try-title suit, and we described how to bring such a claim").

The law of the case doctrine does not foreclose a court's exercise of its subject matter jurisdiction where it otherwise exists. *Jenkins,* 469 S.W.3d at 337. For the reasons stated, we will not apply the doctrine so as to deprive the trial court of jurisdiction to consider appellees' ultra vires claim against Commissioner Bush. The State's first issue is overruled.

Declaration of Non-navigability

The State next argues appellees' requests for declaratory relief are barred by sovereign immunity. The specific complaint seems to be that the trial court lacked subject matter jurisdiction to declare the Canadian River, from the Borger-Stinnett highway to the Sanford Dam, non-navigable. Appellees allege in their live petition the stretch of disputed land "between the Borger-Stinnett Highway and the Sanford Dam does not contain a navigable stream. Therefore, the Government has no interest in that property and has no business claiming any character of rights in that property."

The court in *Sawyer Trust* addressed a similar situation. There the Trust claimed the Salt Fork of the Red River, which crossed land owned by the Trust, was not navigable and hence its bed was not State property.[5] The State argued any attempt to adjudicate its title to the riverbed was barred by sovereign immunity. 354 S.W.3d at 387. The court agreed, holding sovereign immunity prevented the Trust's attempt to challenge the State's land title. 354 S.W.3d at 389-90. But in response to the Trust's request to remand the case so that it might join state actors and pursue an ultra vires claim, the court noted "in

---

[5] The court noted that, for purposes of its opinion, it was assuming the correctness of the parties' position that their respective rights to sand and gravel in the bed of the river turned on the issue of navigability. 354 S.W.3d at 386 n.1.

7

some instances a party may maintain a trespass to try title action against governmental officials acting in their official capacities." *Id.* at 393 (citing *Lain,* 394 S.W.2d at 581); *cf. id.* at 395 (Jefferson, C.J., concurring) (noting State ministerial officers do not have discretion to determine navigability; it is a question for judicial resolution only). Because the question of navigability determined ownership of the riverbed as it crossed the Trust property, the court found the process and principles announced in *Lain,* 349 S.W.2d at 582, should apply. 354 S.W.3d at 394. Thus, held the court, the Trust should have an opportunity to proceed "against the government actors laying claim to the streambed." *Id.*

We find the same true here. The State has not shown us, and we do not find, a reason why the procedural device of a declaratory judgment could not be used to adjudicate appellees' ultra vires claim against Commissioner Bush. *See Sawyer Trust,* 354 S.W.3d at 394; *Lain,* 349 S.W.2d at 581 ("One who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for and on behalf of the state").

The State's second issue is overruled.

Improper Remedy and Insufficient Pleadings

The State's argument in support of its third issue consists of two parts: (1) the trial court erred by failing to sustain its plea to the jurisdiction as to appellees' ultra vires claim against Commissioner Bush because the remedy sought, the recovery of lands, is beyond

8

the trial court's subject matter jurisdiction; and (2) appellees did not allege any ultra vires conduct by a state actor thus depriving the trial court of subject matter jurisdiction.

*Nature of Remedy*

Appellees allege that the land commissioner acted ultra vires in asserting "possession rights without proper authority" to the disputed riverbed because it does not contain a navigable stream. As a result of this ultra vires act, appellees further allege they "are entitled to seek . . . recovery of such lands."

In *Sawyer Trust*, the court stated, "A suit to recover possession of property unlawfully claimed by a state official is essentially a suit to compel a state official to act within the officer's statutory or constitutional authority, and the remedy of compelling return of land illegally held is prospective in nature." 354 S.W.3d at 393. It is unclear to us that the "recovery" of lands to which appellees' pleadings refer differs from the prospective "remedy of compelling return of land illegally held" the court there described.

In *Lain* the court explained the process and principles applicable to claims such as that appellees assert:

> [W]hen officials of the state are the only defendants, or the only remaining defendants, and they file a plea to the jurisdiction based on sovereign immunity, it is the duty of the court to hear evidence on the issue of title and right of possession and to delay action on the plea until the evidence is in. If the plaintiff fails to establish his title and right of possession, a take nothing judgment should be entered against him as in other trespass to try title cases. If the evidence establishes superior title and right of possession in the sovereign, the officials are rightfully in possession of the sovereign's land as agents of the sovereign and their plea to the jurisdiction based on sovereign immunity should be sustained. If, on the other hand, the evidence establishes superior title and right of possession in the plaintiff, possession by officials of the sovereign is wrongful and the plaintiff is entitled to relief. In that event the plea to the jurisdiction based on sovereign immunity should

be overruled and appropriate relief should be awarded against those in possession.

*Lain,* 349 S.W.2d at 582; *see also Sawyer Trust,* 354 S.W.3d at 394.

Like the circumstance existing in *Sawyer Trust*, appellees contend the rightfulness of Commissioner Bush's claim of State-owned title to the disputed riverbed depends on whether the Canadian River is navigable. *Lain* and *Sawyer Trust* permit claimants to seek "appropriate relief" against State actors. Considering their pleadings liberally, appellees' request for relief, under their ultra vires claim, seeks relief consistent with that authorized by *Lain* and *Sawyer Trust*. *See Heinrich,* 284 S.W.3d at 377 (concluding, after considering the nature of liability sought to be imposed and construing the plaintiff's pleadings liberally, plaintiff sued government actors in their official capacities and her claims were not automatically barred by immunity).

*Allegation of Ultra Vires Conduct*

The thrust of the State's argument here is that appellees have not alleged conduct by Commissioner Bush that is ultra vires. The State emphasizes the duties imposed by statute on the General Land Office with regard to state-owned lands and its oil and gas interests. The argument does not expressly refer to a determination of a stream's navigability, but we infer the State's position to be that, whether correct or not, a commissioner's determination of navigability falls within the scope of his official discretion and therefore cannot be ultra vires. In its argument, the State relies in part on *Hall v. McRaven*, 508 S.W.3d 232 (Tex. 2017).

The court in *Sawyer Trust* noted that the Parks and Wildlife Department "has the authority to make determinations on behalf of the State as to navigability of streams and

10

to exercise the State's rights over navigable streambeds."   354 S.W.3d at 394. "Nevertheless," the court continued, "its pronouncement that a stream is navigable is not conclusive of the question.   This Court established long ago that the question of navigability is, at bottom, a judicial one."  *Id.* (citing *State v. Bradford*, 121 Tex. 515, 50 S.W.2d 1065, 1070 (1932)).   From *Sawyer Trust*, we must conclude that an ultra vires claim based on Commissioner Bush's possession of the disputed riverbed in Hutchinson County is not precluded merely because the commissioner had authority to make the determination of its navigability on behalf of the General Land Office.  We do not read the court's opinions in *McRaven*, or *Houston Belt* to call for a contrary conclusion.  *See McRaven*, 508 S.W.3d at 242 n.3;  *Houston Belt,* 487 S.W.3d at 162 n.6 (both citing *Sawyer Trust*);  *Bush v. Lone Oak Club, LLC,* 546 S.W.3d 766, 774-75 (Tex. App.—Houston [1st Dist.] 2018, pet. filed) (expressing opinion *McRaven* did not overrule *Lain*).

Disagreeing with both aspects of the State's argument, we overrule its third issue.

Equitable Relief

In its next issue, the State again combines more than one argument.  First it contends the trial court does not have subject matter jurisdiction to issue an injunction or appoint a receiver.  Second, it argues the trial court lacks jurisdiction to enter an injunction because appellees have not joined indispensable parties to the litigation.

*Injunctive Relief and Receivership*

The State's argument seems predicated on the correctness of its contention that appellees' ultra vires claim is barred by sovereign immunity.   Having rejected that contention, in this interlocutory appeal we will not speculate on the propriety of relief that

11

might be awarded by the trial court in the event appellees prevail in their ultra vires claim. *See Heinrich,* 284 S.W.3d at 376 ("[A] claimant who successfully proves an ultra vires claim is entitled to prospective injunctive relief"); *Lain*, 349 S.W.2d at 582 (successful proponent of claim against government official for wrongful possession entitled to "appropriate relief").

*Joinder of Indispensable Parties*

The State's indispensable parties argument seems to be the trial court lacks jurisdiction to consider appellees' requests for injunctive relief and a receivership because appellees have not joined the Railroad Commission of Texas and the former mineral lessee of the riverbed as parties to the suit.

A trial court possesses broad discretion to decide matters of party joinder. *Longoria v. Exxon Mobil Corp.,* 255 S.W.3d 174, 179 (Tex. App.—San Antonio 2008). Civil Rule 39 guides the exercise of that discretion. *Id.*; TEX. R. CIV. P. 39. If the trial court determines an absent person falls within the provisions of Rule 39(a) it must effect the person's joinder. *Id.* at 180. If Rule 39(a) requires a person's joinder, but joinder cannot be effected, the trial court must decide "'whether in equity and in good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable.'" *Id.* (quoting TEX. R. CIV. P. 39(b)). The State has not shown how the claimed improper party joinder required the grant of its plea to the jurisdiction.

We overrule the State's jurisdictional challenges to appellees' claim for equitable relief.

Recovery of Exemplary Damages

By its final issue, the State argues its plea to the jurisdiction should have been sustained to the extent it challenged the trial court's subject matter jurisdiction to adjudicate appellees' claim for exemplary damages. An award of exemplary damages is not authorized by the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.024 (West 2019) ("This chapter does not authorize exemplary damages").

But whatever monetary amount appellees might seek to recover at trial does not implicate the State's immunity from suit; rather, it pertains to the State's immunity from liability. *See Harris Cty.—Hous. Sports Auth. v. Chilel,* No. 14-12-00380-CV, 2013 Tex. App. LEXIS 5117, at *7-8 (Tex. App.—Houston [14th Dist.] Apr. 25, 2013, no pet.) (mem. op.) (citing *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 696 (Tex. 2003) ("Unlike immunity from suit, immunity from liability does not affect a court's jurisdiction to hear a case and cannot be raised in a plea to the jurisdiction"). Accordingly, a plaintiff's request for recovery of exemplary damages is not properly challenged by a governmental unit through a plea to the trial court's jurisdiction. *Id.*; *see City of Cleburne v. Trussell,* 10 S.W.3d 407, 410 (Tex. App.—Waco 2000, no pet.) ("A plea to the jurisdiction urges that the court lacks the power to determine the subject matter of the controversy. . . . Thus, sustaining a plea to the jurisdiction requires dismissal of the entire cause of action. . . . As a result, the granting of a plea to the jurisdiction on the basis that some of the damages pled are not recoverable would be erroneous") (citations omitted); *Dallas Cnty. v. Gonzales,* 183 S.W.3d 94, 103 (Tex. App.—Dallas 2006, pet. denied) ("The County's argument that appellee cannot recover other damages does not attack the trial court's subject-matter jurisdiction over the cause of action and is outside our limited jurisdiction

13

in this interlocutory appeal"). For that reason, the State's final issue challenging the potential recovery of exemplary damages lies outside the scope of our limited interlocutory appellate jurisdiction. *See CMH Homes v. Perez,* 340 S.W.3d 444, 447 (Tex. 2011) (stating statutes granting interlocutory appeals are strictly applied because they are narrow exceptions to general rule against appeals from interlocutory orders). We accordingly dismiss the State's fifth issue.

Conclusion

Having overruled or dismissed each of the State's grounds supporting its interlocutory appeal, we affirm the court's order denying the State's plea to the jurisdiction.


James T. Campbell
Justice