

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-17-00412-CV

_____

THE STATE OF TEXAS;
TEXAS GENERAL LAND OFFICE; AND
GEORGE P. BUSH, IN HIS OFFICIAL CAPACITY AS
TEXAS LAND COMMISSIONER, APPELLANTS

V.

SIGNAL DRILLING, LLC;
JATEN OIL COMPANY; AND
RIPARIA, LC, APPELLEES

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 41,971; Honorable William D. Smith, Presiding

October 30, 2019

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This is an interlocutory appeal from the trial court's order denying a plea to the jurisdiction based upon an assertion of sovereign immunity by Appellants, the State of Texas, the Texas General Land Office, and George P. Bush, in his official capacity as the

Texas Land Commissioner. Relying on two contracts to which the State of Texas, was a party, Appellees, Signal Drilling, LLC, Jaten Oil Company, and Riparia, LC, contend they are entitled to certain mineral interests located within the riverbed of the Canadian River in Hutchinson County, Texas. After originally bringing a straight contract construction claim against other parties, Appellees amended their pleadings to allege a third-party takings claim against the State of Texas and the Texas General Land Office, and a trespass-to-try-title claim against George P. Bush, in his capacity as the Texas Land Commissioner. Appellants, as third-party defendants, originally filed a general denial in response to Appellees' amended pleadings. After Appellees amended their pleadings to seek injunctive relief and the appointment of a receiver, they filed a plea to the jurisdiction contending the trial court lacked subject matter jurisdiction due to sovereign immunity as to the State of Texas and the Texas General Land Office and official immunity as to Bush, in his capacity as the Texas Land Commissioner.

On October 12, 2017, the trial court denied Appellants' plea to the jurisdiction. On appeal, they contend the trial court erred by (1) misconstruing Appellees' claims as anything other than what they are—contract claims, (2) finding that Appellees' claims come within the narrow exception to immunity established in *Texas A&M University— Kingsville v. Lawson,* 87 S.W.3d 518 (Tex. 2002), (3) finding that Appellant, Bush, acted in an *ultra vires* manner by interpreting and applying the *Canadian River Boundary Agreement* and the *Amended State Lease* in such a manner as to deprive Appellees of certain property interests, and (4) finding that Appellants, the State of Texas and the Texas General Land Office had the requisite intent to effect a takings claim. We affirm the trial court's decision to deny the plea to the jurisdiction filed by Appellants.

2

**BACKGROUND**

The Canadian River, a tributary of the Arkansas River, has its genesis in the Sangre de Cristo Mountains in south eastern Colorado. The river "flows" south and southeasterly across the New Mexico plains before it enters the Texas Panhandle about the midpoint of the western boundary of Oldham County. From there, the river crosses the approximate 190 miles of the Texas Panhandle, flowing eastward and northeastward through Oldham, Potter, Moore, Hutchinson, Roberts, and Hemphill Counties. About midway across the Texas Panhandle, the river is dammed by the Sanford Dam, completed in 1965, creating Lake Meredith as a source of municipal water for eleven cities located in the Texas Panhandle, and serving the secondary purpose of flood control, soil conservation, recreation, and the promotion of wildlife.

Because the Canadian River has, in the past, been considered to be a "navigable" stream, despite the fact that for many miles its average depth is far better measured in inches rather than feet, the State of Texas has laid claim to the oil, gas, and other minerals beneath the riverbed. *See Brainard v. State*, 12 S.W.3d 6, 11 (Tex. 1999) (resolving a dispute between the State of Texas and thirty owners of land adjacent to the Canadian River as to the methodology to be employed in determining the "gradient boundary" as defined by the United States Supreme Court in a series of cases entitled O*klahoma v. Texas*, 260 U.S. 606, 43 S. Ct. 221, 67 L. Ed. 428 (1923)).

Since construction of the Sanford Dam was complete, the restricted water flow of the river has drastically changed the character of the riverbed east of the dam in Hutchinson, Roberts, and Hemphill Counties. The general width of the riverbed has decreased, and the reduced flow of water has encouraged the growth of vegetation in the

3

river channel which "caused confusion and uncertainty about the location of the boundary between the State's riverbed and the [adjacent] Landowners' riparian tracts." *Brainard*, 12 S.W.3d at 11. It is this change in the character of the riverbed that has spawned some of the longest pending, most legally-complex real estate ownership disputes in the State of Texas—disputes that have been complicated and bogged down by the State's claims of sovereign immunity and the lack of a qualified "gradient boundary line survey" for the entire length of the Canadian River. Tremendous amounts of judicial resources, surveying fees, and legal fees have been expended trying to untangle the complex web of competing claims.

The *Brainard* decision established, for the first time, that changes in the waterflow of the Canadian River had effected changes in the actual "riverbed," and as a result thereof, changes in the riparian boundaries had occurred. In order to avoid the cost and uncertainty of additional litigation following *Brainard,* the Texas Land Commissioner began entering into settlement agreements with various landowners and stakeholders holding property interests along the Canadian River. As it is relevant to this litigation, effective January 1, 2002, the State of Texas, acting through the Texas Land Commissioner, entered into an agreement with various parties, including J.M. Huber Corporation and Jaten, known as the *Canadian River Mineral Boundary Agreement* (the "*Boundary Agreement*") affecting the property in dispute.

The *Boundary Agreement* was entered into in order to resolve numerous disputes regarding the boundary line between the riverbed of the Canadian River and the lands adjacent to that river, the "riparian tracts." Of the utmost significance to this litigation was the fact that determination of the disputed boundary lines would resolve issues regarding

4

the ownership of the underlying mineral estates.  Specifically, the parties to the *Boundary Agreement* agreed to compromise and settle all "rights or actions which any party hereto may have or allege to have against any party hereto . . . pertaining or relating to the boundary of their mineral estates between the bed of the [Canadian] River and the lands adjacent to the River."  As a part of their comprehensive settlement, the parties to the *Boundary Agreement* agreed to establish the location of the boundary line between the riverbed (all properties claimed by the State) and the riparian properties (all properties claimed by the adjacent property owners).  The agreement resulted in the State relinquishing its claim to certain properties (referred to as the "Released Tracts") that were no longer considered part of the official riverbed of the Canadian River, while at the same time confirming the State's claims to certain properties defined as being within the banks of the riverbed.

Prior to entry of the *Boundary Agreement*, the State had historically leased the minerals in the Canadian River riverbed abutting the Jaten and Riparia properties to Huber.  As a part of the *Boundary Agreement*, the State and Huber agreed to release the mineral leases then in effect and to replace them with a new lease, known as the *Amended State Lease*, having a fixed term of ten years, commencing January 1, 2002, and expiring on December 31, 2011.  This lease agreement did <u>not</u> contain a standard "and as long thereafter" clause found in a typical mineral lease, or any other language that would permit the lease to be extended beyond its fixed ten-year term.[1]  The State further agreed to convey to Jaten and other ratifying riparian owners its possibility of

---

[1] While the habendum clause of the *Amended State Lease* did indicate that the lease included "the right of renewal, or renewals . . ." it is undisputed that no such renewal or renewals were ever executed prior to December 31, 2011.

reverter in the minerals covered by the *Amended Lease Agreement* so that upon termination of that lease, the riparian owners would own, in fee, the minerals underlying the riverbed adjacent to their respective properties, subject to a 3.5 percent non-participating royalty interest to be retained by the State. The boundaries of any released riverbed property were to be determined by a projection of the boundaries of the riparian tract adjacent to the agreed river bank (parallel to the original north-south survey lines of the riparian section) to the centerline of the property originally covered by the *Amended State Lease.*

The *Boundary Agreement* was appropriately acknowledged and filed of record at Volume 1236, Page 135-222 of the property records of Hutchinson County. The *Boundary Agreement* also provided that other property owners with an interest contiguous to the property covered by the *Amended State Lease* could join in the agreement by executing and delivering a ratification of the Pool Administrator prior to January 1, 2006. Riparia ratified the *Boundary Agreement* on December 30, 2004, in accordance with its terms, and thus became a party to the agreement.

In June 2015, Signal Drilling, LLC filed this lawsuit claiming an interest in the mineral acreage at issue by virtue of an assignment of a top lease from Jaten. Signal's cause of action was based on a claim of trespass and conversion. By an amended petition filed in September 2015, Signal added the Texas General Land Office and the Commissioner as defendants. In December 2015, Signal added Jaten as a necessary "involuntary plaintiff" and in April 2016, Riparia intervened as a plaintiff. Among other claims alleged in their petitions, Jaten and Riparia asserted a trespass-to-try-title claim

6

against the Commissioner and an alternative constitutional takings claim against the State. Signal filed an amended petition asserting similar claims.

In response, the Commissioner and the State persisted in their claim of immunity, addressing the plaintiffs' claims as nothing more than "contract claims masquerading as something else." They further alleged immunity from a claim for attorney's fees and from a takings claim under article 1, section 19 of the Texas Constitution, and they alleged that a federal takings claim was not ripe for adjudication.

Thereafter, on October 12, 2017, the trial court signed an order denying the plea to the jurisdiction filed by the Commissioner and the State. It is from that order that the Commissioner and the State bring this interlocutory appeal.

### APPLICABLE LAW

The State and its agencies are generally immune from suit in the absence of an express waiver of its sovereign immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). Immunity from suit deprives a trial court of subject matter jurisdiction in suits where the State or its agencies have been sued without legislative consent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).

Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conserv. Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Therefore, whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is also a question of law that we must review *de novo. Miranda*, 133 S.W.3d at 226. When reviewing the denial of a plea to the jurisdiction based on sovereign

7

immunity, a reviewing court must liberally construe the plaintiff's pleadings and look to the pleader's intent, while assuming as true the jurisdictional facts alleged in the pleadings unless the defendant has presented some evidence to negate their existence. *Id.* at 226-27. In performing this review, we do not look to the merits of the case, but only consider the pleadings and such evidence as is relevant to the jurisdictional inquiry. *Id.* at 227.

In an interlocutory appeal complaining of a trial court's denial of a plea to the jurisdiction, an appellate court's review is limited to those issues properly raised in the complaining parties' plea to the jurisdiction. *KIPP*, *Inc. v. Whitehead*, 446 S.W.3d 99, 112 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), *overruled on other grounds*, *Alamo Heights Ind. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). In this case, the State parties offered no evidence in support of their plea, conceding to this court that the relevant facts are undisputed. As such, our review is limited to Appellees' pleadings to determine (1) if the pleadings sufficiently allege a cause of action that is not barred, as a matter of law by sovereign immunity and (2) if not, whether the pleadings could be amended on remand to properly allege a cause of action that is not barred. *See Miranda,* 133 S.W.3d at 226-27.

### ANALYSIS

While Appellants have framed their complaints in this appeal as four separate issues, all four issues point to one seminal question—whether Appellees' pleadings, if taken as true, fail, as a matter of law, to allege sufficient facts to state a cause of action not barred by sovereign immunity. We will first address issues one and three dealing with the question of whether Appellants have asserted a cause of action not barred by sovereign immunity. We will then briefly address issues two and four dealing with

8

alternative arguments supporting Appellants' claims of sovereign immunity. For the reasons that follow, we find Appellees have asserted claims which properly invoke the trial court's subject matter jurisdiction.

### ISSUES ONE AND THREE—CONTRACT DISPUTE / ULTRA VIRES CLAIM

The law is well settled that the State holds title to the riverbed (and underlying mineral interests) of a navigable stream. *See* TEX. NAT. RES. CODE ANN. § 21.001(3) (West 2011) (providing that a "'[n]avigable stream' means a stream which retains an average width of 30 feet from the mouth up"). As such, the State retains title to the riverbed when it patents riparian lands. *See Brainard*, 12 S.W.3d at 15 n.3.

It is also well settled that the State and its agencies are immune from suits seeking to construe or enforce contracts to which the State is a party. *See Tex. Nat. Res. Conservation Comm'n*, 74 S.W.3d at 854; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009). The accepted method of asserting governmental immunity is by way of a plea to the jurisdiction. A plea to the jurisdiction based on governmental immunity challenges a trial court's subject matter jurisdiction. *Miranda,* 133 S.W.3d at 225-26. We review a trial court's ruling on a plea to the jurisdiction *de novo. City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

In performing a *de novo* review of a trial court's ruling on a plea to the jurisdiction, we do not look to the merits of the case, but instead consider only the pleadings and such evidence as is relevant to the jurisdictional inquiry. *Miranda*, 133 S.W.3d at 224; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Although we do not look to the merits of the case, we look closely at the claim or cause of action being asserted. In that

9

regard, the Texas Supreme Court has said, "[c]reative pleading cannot be used to effect the loss or waiver of the State's sovereign immunity." *Sawyer Trust*, 354 S.W.3d at 392. A claim of sovereign immunity must, therefore, be decided upon reference to the underlying substance of the claim, not its form. *Dallas Cty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) (looking to substance of plaintiffs' complaint to determine whether death was caused by the condition or use of tangible property).

For example, Texas law provides "sovereign immunity bars [Uniform Declaratory Judgment Act (UDJA)] actions against the state and its political subdivisions absent a legislative waiver." *Tex. Dep't of Transp. v. Sefzik,* 355 S.W.3d 618, 620 (Tex. 2011) (per curiam); *Sawyer Trust*, 354 S.W.3d at 388-89 (holding absent State's consent sovereign immunity bars trespass-to-try-title suit against State, even if brought as action for declaratory judgment under UDJA) (citing *State v. Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961)). Note, however, in *Sefzik,* the Supreme Court stated that it is "[v]ery likely" that such a clam could be brought against the appropriate state official in his official capacity for nondiscretionary acts unauthorized by law under the *ultra vires* exception to immunity. 355 S.W.3d at 621 (citing *Heinrich*, 284 S.W.3d at 372-73). In *Heinrich*, the Supreme Court held that "suits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." 284 S.W.3d at 372.

The plea to the jurisdiction filed in this case asserts that the "Plaintiffs have not met their initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause." Specifically, the plea alleges that the claims for trespass to try title and constitutional takings are merely "contract claims masquerading as

10

something else." As we have already noted, Appellees disagree with this assessment and the trial court denied the plea to the jurisdiction.

In response to Appellants' claims of sovereign immunity, Appellees contend that fee simple ownership of the contested minerals automatically and immediately reverted to them when the *Amended State Lease* expired, by its own terms, on December 31, 2011. According to their interpretation of the *Amended State Lease*, fee simple ownership of the minerals in two of the riverbed tracts, including the executive right to lease those minerals, reverted to Jaten and Riparia on that date. Accordingly, since they were the owners of the minerals (by their theory), they contend the Commissioner had no authority whatsoever to execute a "renewal" of the *Amended State Lease* some four years later. As a result, Appellees contend the Commissioner's purported "renewal" of that lease was an *ultra vires* act and, as such, it was void. They further contended that any continued claim of right to the lands by the Commissioner or his lessees constitutes a wrongful trespass. Because Appellees' pleadings set forth a claim alleging the Commissioner's acts constitute an *ultra vires* act, the trial court did not err in denying Appellants' plea to the jurisdiction as to the Commissioner.

This court faced similar arguments in another appeal concerning claims of ownership to lands adjacent to the Canadian River riverbed in *State v. Riemer,* 571 S.W.3d 441 (Tex. App.—Amarillo 2019, no pet.). There, we held that the trial court did not err by denying a plea to the jurisdiction in a trespass-to-try-title case filed against the State and the Texas General Land Commissioner because the riparian landowners had sought to adjudicate an *ultra vires* claim. "An *ultra vires* suit is one to require a state official to comply with statutory or constitutional provisions." *Id.* at 445 (quoting *Tex.*

11

*Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 633 (Tex. 2010)). In order to come within the *ultra vires* exception to sovereign immunity, a suit must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act. *Riemer,* 571 S.W.3d at 445-46. A state official acts without legal authority "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id.* at 446 (quoting *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016)).

Here, Appellees contend the Commissioner acted without legal authority when he allegedly renewed the *Amended State Lease* some four years after they contend the lease expired by its express terms and their ownership interests became vested. Construing *de novo* Appellees' claims, we find they raise an *ultra vires* claim with sufficient clarity to defeat the Commissioner's claim of immunity. As we stated in *Riemer,* quoting from *Sawyer Trust*, 354 S.W.3d at 395-96, "[o]ne who takes possession of another's land without legal right is no less a trespasser because he is a state official or employee, and the owner should not be required to obtain legislative consent to institute a suit to oust him simply because he asserts a good faith but overzealous claim that title or right of possession is in the state and that he is acting for an [sic] on behalf of the state." Accordingly, the trial court did not err in construing this dispute as something other than a contract dispute and in denying the plea to the jurisdiction as it pertained to the Texas General Land Commissioner. Issues one and three are overruled.

### ISSUE TWO—*TEXAS A&M UNIVERSITY—KINGSVILLE V. LAWSON*

Appellees, relying on a narrow exception to immunity established in *Lawson,* 87 S.W.3d at 518, alternatively claim that the State, having waived immunity in reaching the

*Boundary Agreement,* could not now reclaim that immunity in a suit brought to enforce that agreement. Appellants contend that Appellees' claims do not fall within that narrow exception because (1) the exception only applies in situations where the State has "settle[d] a lawsuit" and (2) on a claim for which the State had previously waived immunity. Because the *Boundary Agreement* entered into by the parties only resolved a standing dispute between the State and the riparian landowners concerning the location of certain boundary lines and did not result from the settlement of a formal pending lawsuit, the facts of this case are clearly distinguishable from the facts in *Lawson.* In light of our disposition of issues one and three, it is unnecessary for us to determine further the application of the limited exception to immunity found in that precedent. *See* TEX. R. APP. P. 47.1. Issue two is pretermitted.

### ISSUE FOUR—STATE'S INTENT TO EFFECT A TAKINGS

Pleading alternatively, Appellees also contended the State's claim of ownership of the disputed property interests constituted a constitutional "takings claim" for which the State did not enjoy sovereign immunity. When private property is taken for a public purpose, the Texas Constitution requires the government to adequately compensate the owner of that property for that "taking." *See* TEX. CONST. art. I, § 17 (providing that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation"). The Texas Constitution waives sovereign immunity for an unconstitutional taking of property without adequate compensation. *Koch v. Tex. Gen. Land Office*, 273 S.W.3d 451, 457 (Tex. App.—Austin 2008, pet. denied) (citing *Steele v. Houston*, 603 S.W.2d 786, 791 (Tex. 1980)).

13

The fundamental elements of a takings claim are as follows: (1) a State defendant intentionally performs an act, (2) that results in a "taking" of property, and (3) for the public benefit. *Koch*, 273 S.W.3d at 458 (citing *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)). Here, Appellees contended the State's knowing and intentional assertion that it holds title to the disputed mineral interests, adverse to the claimed interests of Appellees, constituted a taking, without compensation, in violation of article I, section 17 of the Texas Constitution.

While the State does not dispute the contention that sovereign immunity is waived for purposes of an unconstitutional taking of property for the public benefit, it disputes the character of the lawsuit as a takings claim. Instead, the State contends that Appellees' claims are nothing more than a contract dispute, masquerading as a takings claim. Additionally, the State claims that Appellees have failed to establish that the State *intended* to take any property without adequate compensation. We find the State's arguments fail on both counts.

First, the State's argument that the disputed issue in this land title dispute "is really one for breach of contract" is at odds with the Texas Supreme Court decision in *El Dorado Land Co.*, *L.P. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013) (holding that a future interest in real property is compensable under the takings provision of the Texas Constitution). Here, the State claims title to the disputed property by virtue of an alleged renewal of a mineral lease Appellees contend expired by its own terms, and Appellees claim title by virtue of an assigned reversionary interest. As such, this is not a "breach of contract" dispute. It is a property ownership dispute based on the different construction being given to the instruments giving rise to the claimed property interests. Simply put,

14

Appellees' claims are property claims, not breach of contract claims. As such, we reject the State's argument that Appellees' claims are merely claims seeking compensation for a breach of contract, and thus outside the waiver of immunity generally applicable to takings claims.

Secondly, the State contends Appellees failed to establish that the State "intended" to take any property without adequate compensation. Appellees respond to this argument by contending the State failed to preserve this claim by failing to make a similar argument to the trial court below. We agree. In order to present a claim on appeal, an appellant must first present that argument to the trial court and any claim not properly presented may not be raised for the first time on appeal. TEX. R. APP. P. 33.1(a). Because our review of this interlocutory appeal is limited to the trial court's determination of its own subject matter jurisdiction, we will not consider any matters beyond what Appellants presented to the trial court for its consideration. Issue four is overruled.

### CONCLUSION

Having overruled issues one, three, and four, and having pretermitted issue two, the order of the trial court denying the plea to the jurisdiction of the State of Texas, Texas General Land Office, and George P. Bush, as Texas Land Commissioner, is affirmed.

Per Curiam